IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In the Matter of the Complaint of              )
                                               )
Scott Moore, as Administrator of the Estate    )
of Gregory Moore, Owner of the Vessel          )      Case No: 1:17-cv-1310-PWG
"REEL INTIMIDATOR" for Exoneration             )
From or Limitation of Liability                )
                                               )
                                               )

REPLY IN SUPPORT OF THE
UNITED STATES' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Third Party Defendant United States hereby replies to Plaintiffs' Opposition to

Defendant's Motion to Dismiss, and Motion for Summary Judgment. (ECF No. 77).

**(1)     Plaintiffs Misstate the Standard for a Motion to Dismiss Under Rule 12(b)(1).**

Plaintiffs assert that the summary judgment standard applies to a motion to dismiss under

12(b)(1) for lack of subject matter jurisdiction. Opp'n at 11, ¶ 33. It does not. In considering

whether to dismiss under Rule 12(b)(1), the Court "may consider evidence outside the pleadings

*without converting the proceedings to one for summary judgment.*" *Evans v. B.F. Perkins Co.*,

166 F.3d 642, 647 (4th Cir. 1999) (emphasis added) (internal citations omitted); *see also*

*Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (explaining the difference between

summary judgment under Rule 56 and a motion to dismiss under Rule 12(b)(1) in that, with

regard to the latter, "the court may consider the evidence beyond the scope of the pleadings to

resolve factual disputes concerning [subject matter] jurisdiction."). Also, it is Plaintiffs' burden –

not that of the United States – to prove that the district court has subject matter jurisdiction.

*United States ex. Rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Therefore, since the

United States has moved to dismiss under Rule 12(b)(1) by raising the discretionary function

exception, Plaintiffs carry the burden of demonstrating to this Court that the exception does not

apply. *See Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017).

**(2)     Negligence is Irrelevant to the Discretionary Function Exception Analysis.**

Plaintiffs' allegations of negligence (Opp'n at 4-5, ¶¶ 9-11) have no bearing in the

application of the discretionary function exception.[1] The discretionary function exception applies

even if the discretion was "abused." 28 U.S.C. §2680(a); *see also United States v. Varig Airlines*,

467 U.S. 797, 815-816 (1984) (holding that the discretionary function exception applied to the

FAA's spot check system, even though the FAA was negligent in checking a specific aircraft);

*Indem. Ins. Co. v. United States*, 569 F.3d 175, 181 (4th Cir. 2009) (holding that it is "of no

moment in our analysis" that the government employee characterized his action "as a mistake").

The Fourth Circuit has considered similar arguments in ruling that allegations of

negligence are not relevant in determining whether the discretionary function exception applies.

*Holbrook v. United States*, 673 F.3d 341 (4th Cir. 2012). In *Holbrook*, the plaintiff alleged that

the Federal Aviation Administration (FAA) was negligent when it issued an airworthiness

certificate for an imported helicopter. *Id.* at 343. Upon later review, the FAA reversed its

decision and suspended the airworthiness certificate, causing the plaintiff, who had leased the

---

[1] Plaintiffs' citation to *Indian Towing v. United States*, 350 U.S. 61 (1955), is not relevant
to the discretionary function exception analysis. In that case, the plaintiff alleged that the Coast
Guard failed to maintain an unmanned light marking an island causing a tug and its tow to run
aground. The United States did not raise the discretionary function exception, but instead argued
that the Coast Guard did not have a duty to maintain the light. Numerous courts, including the
Supreme Court, have since clarified that *Indian Towing* does not apply in discretionary function
cases. *See United States v. Gaubert*, 499 U.S. 315, 326 (1991) ("Indeed the Government did not
even claim the benefit of the [discretionary function] exception but unsuccessfully urged that
maintaining the light was a governmental function for which it could not be liable."); *see also
Baum v. United States*, 986 F.2d 716, 723 (4th Cir. 1993) ("[S]ubsequent decisions of the Court
have all but disavowed *Indian Towing* as authority relevant to the discretionary function
exception.").

helicopter for his flight instruction business, to suffer harm. *Id*. The Fourth Circuit dismissed the

plaintiffs' negligence-based arguments because the "argument mistakes a subsequent allegation

of error for a prior lack of discretion." *Id*. at 350. The Fourth Circuit went on to explain that

"[t]he inquiry is thus whether the discretion exists, not whether in later tort litigation it is alleged

to have been abused." *Id*. Therefore, even if Coast Guard personnel had been negligent in

conducting the search and rescue in this case, which the United States denies, such negligence

has no place in the discretionary function analysis.

**(3)     Plaintiffs Incorrectly Rely on the Abrogated Distinction Between Operational
          Versus Planning Level Conduct.**

Plaintiffs' argument that the discretionary function exception does not apply to the

operational conduct at issue in this search and rescue operation is baseless. Plaintiffs appear to

rely – without legal support – on the defunct distinction between operational versus planning

level conduct. (Opp'n at 16, ¶ 50). The Supreme Court has expressly abrogated this distinction.

*See United States v. Varig Airlines*, 467 U.S. 797 (1984); *United States v. Gaubert*, 499 U.S. 315

(1991).

The Fourth Circuit recently considered similar arguments in discarding the operational-

planning distinction. *Wood v. United States*, 845 F.3d 123 (4th Cir. 2017). In *Wood*, the Fourth

Circuit held that "the analysis must focus solely on whether the government conduct involved

choice implicating policy." *Id*. at 128. (internal citation removed). There, the plaintiff was

injured in a slip and fall and challenged maintenance decisions of Navy personnel alleging they

negligently left a mock-ship structure, in particular the floor mats placed adjacent to it, in a

dangerous condition. *Id*. at 124. The Fourth Circuit held that the discretionary function exception

applied, and that the Navy's maintenance decisions fell "*within the overarching policies of a*

*regulatory scheme* that gives officers discretion in how to implement that policy." *Id.* at 131.

(emphasis in original).

Similar to the facts in *Wood*, here Plaintiffs ask this Court to distinguish the decision to

initiate a search and rescue (Opp'n at 14, ¶ 45), from later decisions by operational personnel in

executing that search and rescue mission (Opp'n at 15, ¶ 46; 16, ¶ 50). Yet, Plaintiffs provide no

legal support for excluding operational decisions in how the Coast Guard implements its search

and rescue policy. Moreover, the Fourth Circuit explicitly addressed and discarded this

distinction in *Baum*, 986 F.2d at 724, and most recently in *Wood*, 845 F.3d at 128-29. Like the

policies that the Fourth Circuit found determinative in *Wood*, here the overarching policies under

the statutory scheme for search and rescue provide Coast Guard personnel with broad discretion

in how to plan and execute search and rescue operations (ECF No. 74-6 at 2-5), and should be

protected from review under the discretionary function exception.

**(4) On Prong One of *Gaubert*, Plaintiffs Fail to Identify a Mandatory Course of Conduct, Triggering a Strong Presumption Under Prong Two that the Challenged Conduct is Discretionary and Susceptible to Policy Analysis.**

Plaintiffs fail to identify any relevant federal statute, regulation, or policy that specifically

mandated a course of action that Coast Guard personnel were required to follow in this search

and rescue mission.[2] *See Gaubert*, 499 U.S. at 322. Plaintiffs simply assert, without any support,

---

[2] Plaintiffs have identified only one Coast Guard policy pertaining to a mayday relay that the Coast Guard allegedly failed to follow. Opp'n at 8, ¶ 20. Per the express language of the Coast Guard policy cited, a Mayday Relay applies to three scenarios, none of which are applicable here because this case does not (1) involve assistance for a Coast Guard unit in distress, (2) facts where a responding unit was overwhelmed, or (3) a scenario where the distress call was not heard or acknowledged. To the extent that Plaintiffs argue that a UMIB was inappropriate for this distress situation, the same Coast Guard policy (§ 2.6.2) states that a UMIB "by definition conveys urgency" and is the appropriate "tool" for alerting the maritime public of a "distress or potential distress situation" as was involved in this case (§ 2.6.1). The Coast Guard did issue a UMIB for this case. ECF No. 74 at 6.

that the decisions and actions of the Coast Guard following the initiation of search and rescue operations were all required by Coast Guard policy. Opp'n at 16, ¶ 50. No mandatory policy applied to the challenged conduct, rather, Coast Guard policy expressly vested its personnel with discretion for the conduct at issue. (ECF No. 74-6 at 4-5).

Because the challenged conduct was discretionary, the United States is entitled to a presumption that the challenged conduct was based on public policy considerations. *Gaubert*, 499 U.S. at 324; *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001) (finding it unnecessary to go beyond the permissive language of the Indian Health Care Improvement Act, which did not mandate emergency medical treatment to non-Indians, in shielding a decision of a hospital and its personnel to deny emergency care under the discretionary function exception).

The Fourth Circuit recently held that the United States was entitled to a presumption on the second prong where the agency policy provided for discretion. *Indem. Ins. Co.*, 569 F.3d at 175. There, the Coast Guard used its discretion in testing a vessel's stability and certifying the maximum number of passengers the vessel could safely carry. *Id.* at 178. When the vessel later capsized, the plaintiff alleged the Coast Guard was negligent in applying the stability test for its vessel. *Id.* at 177-78. The Fourth Circuit found that the testing methodology was only recommended and therefore discretionary. *Id.* at 180-81. The Fourth Circuit went on to hold that the strong presumption for public policy considerations was met because the policy language itself granted discretion and plaintiff "put forward no evidence to carry their burden of showing that … the Coast Guard's acts are not grounded in considerations of public policy." *Id.* at 181.

Like the policy that the Fourth Circuit found determinative in *Indemnity Ins. Co.*, here the policy for search and rescue provides Coast Guard personnel with guidance and broad discretion in how to plan and execute search and rescue operations (ECF No. 74-6 at 2-5), and should

therefore be entitled to a strong presumption that the second prong of the discretionary function

exception is satisfied.

**(5)     Plaintiffs' Arguments Concerning Second Prong of the Discretionary Function
Analysis Are Contrary to Law and Otherwise Unsupported.**

On the second prong, Plaintiffs do not offer any credible argument to rebut the

presumption that the discretionary decisions made by Coast Guard personnel in the search and

rescue operation were susceptible to policy analysis. Instead, Plaintiffs argue, again without

support, that because a search and rescue can also be accomplished by private "civilians," the

conduct does not involve any social, political, or economic considerations and is therefore not

susceptible to policy analysis. Opp'n at 18, ¶ 55.[3] This, however, is not the test. Whether a

private citizen could also conduct the search and rescue operations is irrelevant under the second

prong.

Plaintiffs also argue that this Court must use a fact-based analysis to determine the

applicability of the second prong of the discretionary function exception. Opp'n at 12-13. This is

contrary to Supreme Court precedent in *Gaubert*. As the Fourth Circuit explicitly discussed in

*Baum*, 986 F.2d at 720-21, "[r]ather than requiring a *fact-based inquiry* into the circumstances

surrounding the government actor's exercise of a particular discretionary function, we are of

opinion that a reviewing court in the usual case is to look to the nature of the challenged decision

in an *objective*, or general sense, and ask whether that decision is one which we would expect

inherently to be grounded in considerations of policy." (emphasis added).

---

[3] Plaintiffs' use of the term "civilian" might also be intended to distinguish civilian federal employees from active duty service members. If so, Plaintiffs do not provide any legal support for their proposition that the discretionary function exception shields the United States from liability for the conduct of some federal employees but not others. The statute contains no such distinction. *See* 28 U.S.C. § 2680(h).

**(6)     The Subjective Opinion of Operational Coast Guard Personnel is Irrelevant to Discretionary Function Exception Analysis.**

Plaintiffs argue that the subjective opinions of Coast Guard personnel who conducted the search and rescue operation disclose no consideration of social, political, or economic factors. Opp'n at 3, ¶ 6; 19, ¶ 56. The Supreme Court explicitly ruled that "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Therefore, whether the Coast Guard personnel who conducted the search and rescue operation subjectively believed that they did not consider social, political, and economic factors in the course of their duties makes no difference to the discretionary function analysis. *See Baum*, 984 F.2d at 720-21.

**(7)     Plaintiffs' Opposition Does Not Contain Any Material Facts to Support Their Argument That Coast Guard Worsened Grissom's Position.**

While the United States urges the Court to resolve this entire case by its motion to dismiss under the discretionary function exception, should the Court feel it necessary to rule on the United States' alternative motion for summary judgment, Plaintiffs' arguments also fail under the Good Samaritan Doctrine. Plaintiffs cannot avoid summary judgment simply by alleging that the Coast Guard was negligent. Rather, Plaintiffs must set forth material facts that the Coast Guard affirmatively worsened Grissom's position. *Turner v. United States*, 736 F.3d 274, 280-281 (4th Cir. 2013). "The Good Samaritan rule does not impose liability for merely *negligent failure to confer a benefit*, but only for negligently making matters worse." *Rodrigue v. United States*, 968 F.2d 1430, 1434 (1st Cir. 1992) (emphasis added). Grissom's position could be worsened by the Coast Guard in only two possible ways: (1) by the Coast Guard causing "some physical change" that directly increased the risk of harm, *Patentas v. United States*, 587

7

F.2d 707, 717 (3d Cir. 1982); or (2) by inducing detrimental reliance either directly, or by

deterring would-be rescuers, resulting in increased risk over what it would have been had the

Coast Guard not responded at all. *Turner*, 736 F.3d at 280.

First, Plaintiffs have not alleged, and effectively concede, that the Coast Guard did not

cause any physical change to directly increase the risk of harm to Grissom. Second, even if

Plaintiffs' version of the facts were accepted as true for this motion, Plaintiffs have not presented

any evidence that the Coast Guard worsened Grissom's position by deterring would-be rescuers.

Instead, Plaintiffs assert that the Coast Guard was negligent in failing to respond quicker, and by

failing to communicate with Grissom and others as the case unfolded.

Plaintiffs emphasize that, despite initially launching within minutes of receiving the

distress call, the Coast Guard took over one hour to arrive at Grissom's last known position.

Opp'n at 9, ¶ 26. Yet, Plaintiffs fail to acknowledge that the same extremely hazardous weather

conditions that caused Grissom's boat to take on water and capsize in the Potomac River also

delayed the Coast Guard boat from arriving any earlier than it did (ECF No. 74 at 5), and

prevented other nearby agencies from providing assistance (ECF No. 74 at 7).

A delayed response is not a worsening of position. In *Rodrigue*, the First Circuit held that

a four-hour delay in responding to a swimmer carried out to sea by strong currents at a nearby

beach did not worsen the position of the swimmer. 968 F.2d at 1432. There, the Air Force had

repeatedly assured local responders that it was sending a helicopter, but failed to do so in time to

save the swimmer from drowning. *Id*. at 1435. In the suit that followed, the plaintiff argued that

other rescue attempts "might have been successfully undertaken" during the four-hour delay had

the Air Force not assured other responders that a helicopter was coming to the aid of the

swimmer. *Id*. The First Circuit ruled that "might have been" falls short of the necessary "would

have been" burden necessary to establish that the Air Force worsened the swimmer's position.
*Id.* Like *Rodrigue*, the alleged delay and speculation about what might have been done while the
Coast Guard was in transit to Grissom's last known position falls far short of the evidence
necessary to show a worsening of Grissom's position.

Plaintiffs' other negligence claims all relate to an alleged failure to directly communicate
with Grissom (Opp'n at 5, ¶ 11); however, Plaintiffs admit that the Coast Guard lost contact with
Grissom shortly after receiving the distress call (Opp'n at 2, ¶ 1). Ignoring this fact, Plaintiffs
assert that the Coast Guard worsened Grissom's position by not communicating information that
was (1) not immediately known or reasonably foreseeable by the Coast Guard (ECF No. 74 at 6),
and (2) impossible to relay to Grissom regardless (Opp'n at 2, ¶ 1). Therefore, Plaintiffs'
allegations of the Coast Guard's failure to communicate do not meet the test for worsening
Grissom's position.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court either
dismiss the Third-Party Complaint or, in the alternative, grant summary judgment in favor of the
United States.

January 10, 2020                              Respectfully Submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General
                                             Civil Division

                                             ROBERT K. HUR
                                             United States Attorney

                                             ALAN C. LAZEROW
                                             Assistant United States Attorney


                                              /s/ Justin R. Jolley
                                             BRADLEY J. PREAMBLE
                                             JUSTIN R. JOLLEY
                                             Trial Attorneys
                                             U.S. Department of Justice
Of Counsel:                                  Civil Division, Torts Branch
                                             Aviation & Admiralty Litigation
LCDR JESSE L. HOUCK                          P.O. Box 14271
Deputy Office Chief                          Washington, DC 20044-4271
Office of Claims & Litigation                Tel: (202) 616-4019/4035
U.S. Coast Guard, Stop 7213                  Fax: (202) 616-4002
2703 Martin Luther King Jr., Ave., SE        E-Mail: bradley.j.preamble@usdoj.gov
Washington, DC 20593-7213                             justin.r.jolley@usdoj.gov

                                             *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I certify that on January 10, 2020, I filed the foregoing document via the CM/ECF system

which sent a copy to the following counsel of record:

Michael J. Schreyer, Esquire
Eight Post Office Road
Waldorf, MD 20602
(301) 932-9997
Schreyer@dcmdlaw.com

*/s/ Justin Jolley*
JUSTIN R. JOLLEY
U.S. Dept. of Justice