**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td></tr>
<tr><td>In the Matter of the Complaint of</td><td>*</td></tr>
<tr><td>Scott Moore, as Administrator of the Estate<br>Of Gregory Moore, Owner of the Vessel<br>"REEL INTIMIDATOR" for Exoneration<br>From or Limitation of Liability</td><td>*<br><br>*<br><br>*</td><td>Case No.: 1:17-cv-1310-PWG</td></tr>
<tr><td></td><td>*</td></tr>
<tr><td></td><td>*</td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Third Party Plaintiff Katelyn Burroughs, Individually and as Personal Representative of the Estate of Roger Grissom, Sr., filed suit against the United States pursuant to the Suits in Admiralty Act (SIAA) 46 U.S.C. §§ 30901–18.  She alleges that, while conducting a rescue mission to search for Roger Grissom and others who were aboard the vessel *Reel Intimidator* before it capsized in a storm on November 19, 2016, the United States Coast Guard (USCG) acted negligently and created a reliance interest on behalf of Grissom and the others aboard.  Answer and Compl., 8-9, ECF No. 12.  That negligence, according to Burroughs, was the proximate cause of loss and damage to the distressed mariners aboard the vessel whose position "worsened in reliance on the undertaking [of the rescue mission] by the Coast Guard."  *Id.* at 9.

The Government has moved to dismiss for lack of subject matter jurisdiction, claiming that the sovereign immunity discretionary function exception of the Federal Tort Claims Act (FTCA) protects it from suit relating to the USCG's actions on the night of the rescue.  Def.'s Mot. Mem. 8-9, ECF No. 74.  The discretionary function exception is set forth in the FTCA.  28 U.S.C. §

1

1364(b), §§ 2671-80.  In *McMellon v. United States*, the Fourth Circuit held the discretionary function exception also applies to suits filed under the SIAA.  387 F.3d 329, 349 (4th Cir. 2004) (*en banc*) ("[S]eparation-of-powers principles require us to read a discretionary function exception into the SIAA . . . .").  For the reasons that follow, I agree with the United States, and dismiss this complaint with prejudice.[1]

The relevant actors in this case are various USCG personnel involved in the November 19th rescue operation.  According to the Government's motion, those individuals include Petty Officer Michael McCarthy, who took the distress call while stationed at the Coast Guard Sector Maryland-National Capital Region command center, Def.'s Mot. Mem. 4; Petty Officer Ian McGoohan, the assigned Operations Unit controller, also stationed at the command center, *id.* at 5; Petty Officer James Bonner, who commanded the first-dispatched USCG 45-foot rescue boat, *id.* at 6; Petty Officer Michael Esce, who relieved Petty Officer McGoohan, *id.*; and Petty Officer Richard Chandler, whose crew relieved Petty Officer Bonner and his crew during the search, *id.*

The Plaintiff, who carries the burden to establish jurisdiction, *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017), fails to establish that the USCG's decisions at issue are not protected by the discretionary function exception, and therefore sovereign immunity shields those decisions.[2] The parties fully briefed the motion (ECF Nos. 74, 77, 78), and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018).

---

[1] Because I find in favor of the government on the basis of the discretionary function exception, I will not reach the alternative arguments the Government raised as to the Good Samaritan Rule.

[2] Plaintiff asserts that the Coast Guard acted negligently during the rescue operations. Pl.'s Resp. Mem. 4-5. The Government correctly states in its reply that Negligence has no bearing on the applicability of the discretionary function exception. *Holbrook v. United States*, 673 F.3d 341, 350 (4th Cir. 2012).

## Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a plaintiff's complaint due to lack of subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). "Jurisdiction of the lower federal courts is . . . limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Because subject matter jurisdiction involves the court's power to hear a case, it cannot be waived or forfeited, and courts have an independent obligation to ensure that subject matter jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The burden of establishing subject matter jurisdiction rests squarely with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). But the district court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

A defendant may challenge the district court's subject matter jurisdiction in two ways. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). First, a defendant may raise a facial challenge, alleging "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under such a challenge, the court takes the complaint's allegations as true. *Kerns*, 585 F.3d at 192. Alternatively, a defendant may raise a factual challenge, asserting that the jurisdictional allegations in the complaint are untrue. *Id.* In that case, the court may consider evidence outside of the pleadings without converting the motion to one for summary judgment. *Id.*

The Government does not state in its motion whether it brings a facial or factual challenge. However, I will construe the motion as a facial challenge, because the Government is essentially

arguing that the discretionary function exception precludes jurisdiction even on the facts set forth in Plaintiff's complaint.   Accordingly, I will take the facts alleged in the complaint as true and deny the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction.   *Id.*

## Discussion

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Kerns*, 585 F.3d at 193-94 ("Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit.").   In the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, Congress "waived the sovereign immunity of the United States for certain torts committed by federal employees" within the scope of their employment. *Kerns*, 585 F.3d at 194 (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)). "The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).[3]

However, the FTCA lists several exceptions under which the United States does not waive its sovereign immunity and consent to be sued.  28 U.S.C. § 2680.  One of these is the discretionary function exception, which exempts from the waiver of sovereign immunity

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

---

[3] As already noted, while the following discussion of the discretionary function exception relies on analysis from the FCTA, it is clear that the same principles apply with equal force to a cause of action under the SIAA. *McMellon v. United States*, 387 F.3d 329, 349 (4th Cir. 2004) *(en banc)* (holding the SIAA implicitly contains a discretionary function exception to its waiver of immunity).

28 U.S.C. § 2680(a). With this exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). If the discretionary function exception applies, the United States has not waived sovereign immunity and the court lacks subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304-05 (4th Cir. 1995).

Courts undertake a two-tier analysis in order to determine whether the discretionary function exception applies. First, the Court must consider "whether the governmental action complained of involves an element of judgment or choice." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993) (internal quotation marks omitted) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Piechowicz v. United States*, 885 F.2d 1207, 1211 (4th Cir. 1989)). As the Fourth Circuit has instructed,

> [t]he inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action. If such a mandatory statute, regulation, or policy applies, then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary. In that case the government actor "has no rightful option but to adhere to the directive," and if the plaintiff can show that the actor in fact failed to so adhere to a mandatory standard, then the claim does not fall within the discretionary function exception.

*Baum*, 986 F.2d at 720 (quoting *Berkovitz*, 486 U.S. at 530).

Second, if no such mandatory rule exists and the government must exercise its choice or judgment, the Court "ask[s] whether the choice or judgment involved is one based on considerations of public policy." *Id.* (internal quotation marks omitted) (citing *Berkovitz*, 486 U.S. at 531; *Gaubert*, 499 U.S. at 323-24). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at

324-25; *see also Baum*, 986 F.2d at 720-21 (4th Cir. 1993) (eschewing a "fact-based inquiry" in favor of an examination of the objective and general nature of the type of decision in question). Notably, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7; *see also Totten v. United States*, 806 F.2d 698, 700 (6th Cir. 1986) (citing *Dalehite v. United States*, 346 U.S. 15, 27-28 (1953)) (drawing a distinction between torts committed in the course of routine activities, such as operation of a motor vehicle, and "those associated with activities of a more obviously governmental nature"). The core inquiry is whether the decision in question is one inherently expected to be grounded in policy considerations. *Baum*, 986 F.2d 720-21.

The Government contends that the conduct at issue in this case is discretionary and rooted in public policy considerations. Def.'s Mot. Mem. 2. More specifically, the Government argues that the first prong of the *Berkovitz-Gaubert* analysis is met because the alleged conduct is not governed by any mandatory federal directives, since the challenged conduct—a search and rescue mission in an unpredictable and dangerous environment—is not governed by any policy or directive that establishes mandatory (hence, non-discretionary) conduct. In support, the Government cites the federal statute that grants the USCG broad discretion during the types of operations at issue here: "the Coast Guard may perform any and all acts necessary to rescue and aid persons and protect and save property." 14 U.S.C. § 521(a)(1). Thus, Congress leaves to USCG personnel the exact means and methods of conducting search and rescue missions in which they choose to engage.

As to the second prong, the Government claims that the USCG's conduct during search and rescue operations falls under the discretionary function exception because "decisions of which search and rescue assets to deploy and when" requires personnel to "balance many competing policy considerations including the safety of Coast Guard personnel and others, preservation of property, funding, resource limitations, and the needs of other concurrent [rescue] operations." Def.'s Mot. Mem. 14. The Government argues that USCG decisions on the night the *Reel Intimidator* capsized were "not mandated by federal law or policy." *Id.* at 14.

But Plaintiff maintains that the conduct in question created a reliance interest among the *Reel Intimidator's* crew that the USCG's rescue efforts would be conducted with due care, as measured by tort law. Pl.'s Resp. Mem. 19. Plaintiff argues this reliance negated any need by those aboard the *Reel Intimidator* to seek other sources of help, such as calling 911 on their cell phones. Consequently, Plaintiff says, the discretionary function exception does not apply, because the Defendant's policy discretion in choosing to engage in a rescue requires the USCG to act with due care and it failed to do so when it did not inform the *Reel Intimidator's* crew about the operation's status. Pl.'s Resp. Mem. 15.

"Before a court can apply the two-part test to determine whether the discretionary function exception applies, the court must first identify the 'conduct at issue.'" *Krey v. Brennan*, Civil Action No. DKC 15-3800, 2017 WL 2797491, at *4 (D. Md. June 28, 2017) (quoting *Bell v. United States*, 238 F.3d 419 (6th Cir. 2000)). Certainly, the Government is correct that whether to engage in rescue operations, when to conduct them, and how to execute them is a matter of discretion, as it pertains to "a question of how to allocate limited resources among competing needs." *Baum*, 986 F.2d at 722. *See also Smith v. United States*, 251 F. Supp. 2d 1255, 1259-61 (D. Md. 2003) (Coast Guard's choice of when and how to repair a navigational aid was based on considerations

of public policy, because it "[took] into account the question of how to allocate resources among competing needs"); *Claypool v. United States*, 103 F. Supp. 2d 899, 908 (S.D.W.V. 2000) (National Park Service's decision not to maintain roadside terrain was policy-based, because the decision was made considering allocation of NPS's limited resources). Plaintiff's claim centers around the alleged failure to properly conduct such an operation once the Coast Guard exercised its discretion to undertake it in the first place. Compl. 15; Pl.'s Resp. Mem. 15. Thus, the focus here is the conduct of the USCG personnel and their decisions during the rescue operations. Plaintiff's arguments attack those decisions, such as not telling the crew to also call 911, while the Government defends USCG decisions that night as the product of experience and discretion.

Turning to the first prong of the *Berkovitz-Gaubert* analysis, the Government asserts that decisions during search and rescue operations are rooted in experience and sound judgment, not explicit policy directives. Def.'s Mot. Mem. 11-12. Upon review of the relevant policies the Government cited and provided, I agree. Each decision the Coast Guard personnel made in responding to the distressed vessel, from deploying the rescue boat to calling in a Maryland State Police helicopter, was undertaken in light of their judgment and experience. Def.'s Mot. Mem. 5, 12. The controlling statute's wording, 14 U.S.C. § 521(a)(1), clearly contains indicia of discretion: Congress allows that the Coast Guard "may" conduct these types of operations. Not only does § 521(a)(1), discussed above, vest Coast Guard personnel with broad discretion, but so too does USCG internal guidance on search and rescue operations. The Government cites internal USCG policy on conducting search and rescue operations, which unambiguously provides

> Coast Guard personnel are expected to exercise broad discretion in performing the functions discussed. The Coast Guard retains the discretion to deviate from or change this guidance without notice. This document creates no duties, standard of care, or obligations to the public and should not be relied upon as a representation by the Coast Guard as to the matter of proper performance in any particular case.

U.S. Coast Guard, *Coast Guard Addendum to the United States National Search and Rescue Supplement* (SAR Addendum), COMDTINST M16130.2F, at 2 (Jan. 7, 2013) (hereinafter "Addendum"). The Addendum further indicates USCG members are instructed to act with sound judgment. *Id.* Importantly, for purposes of the analysis here, the safety of the operation guides decisions such as those made on November 19th. According to the Addendum "[t]he choice of search units, air or surface, depends greatly on safety of operations under the given conditions . . . ." *Id.* at 40. Therefore, the treacherous conditions that caused the *Reel Intimidator* to capsize in the first place also impacted USCG decisions about which resources to deploy and when and how to deploy them.

These search and rescue guidelines are paramount when analyzing the first prong of the *Berkovitz-Gaubert* test. The Plaintiffs point to no directives, such as when to call in non-USCG resources or what USCG dispatchers should advise distressed mariners about response times, that mandate any one method of conducting a search and rescue operation in stormy conditions. The *Berkovitz-Gaubert* test requires the court to assess "whether the governmental action complained of involves an element of judgment or choice." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993) (internal quotation marks omitted) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. Gaubert*, 499 U.S. 315, 322 (1991). On this first inquiry, there can be no legitimate doubt that it does. USCG employees had discretion in determining whether and how to search for the *Reel Intimidator's* crew on November 19, 2016.

Moving to the second prong of the test, whether the act complained of is the type susceptible to policy analysis, the same answer is required. It is. As an initial matter, discretionary conduct is presumed to be based on public policy considerations. *See Gaubert*, 499 U.S. at 324 ("When established governmental policy, as expressed or implied by statute,

regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."); *Williams v. United States*, 242 F.3d 168, 175 (4th Cir. 2001).

Plaintiffs argue the discretionary function exception does not apply here because, during depositions, USCG members stated that social, political, and economic factors did not play a role in their decisions during the rescue mission. Maybe so, but that's not the test; *Gaubert* instructs that "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Therefore, citing to deposition testimony about subjective perceptions or beliefs of the Coast Guard rescue crew is unavailing.

As the Supreme Court noted in *Gaubert*, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n.7. For example, if a government official drove an automobile on government business and "negligently collided with another car, the [discretionary function] exception would not apply." *Id.* The instant case is easily distinguished. Conducting a search and rescue mission in response to a frantic call for help is a core role of the USCG. The decisions here were not akin to negligently colliding with another car while conducting government business; rather, USCG personnel braved dangerous conditions to rescue imperiled fishermen. That their efforts did not result in a happy ending is tragic, of course, but it is not something for which the law holds them liable.

Search and rescue operations fit the mold of the type of conduct that gave rise to the discretionary function exception. *See Varig Airlines*, 467 U.S. at 813 ("[T]he basic inquiry

concerning the application of the discretionary function exception is whether the challenged acts of a Government employee . . . are of the nature and quality that Congress intended to shield from tort liability."). *Varig* offers a helpful focus for purposes of this case, noting that Congress seeks "to protect certain governmental activities from exposure to suit by private individuals." *Id.* at 808. Specifically, the *Varig* Court expressed concern about the adverse consequences of imposing liability that would "handicap efficient government operations." *Id.* (citing *United States v. Muniz*, 374 U.S. 150, 163 (1963).

It's easy to understand why USCG rescue operations like these should be protected from suit: the Coast Guard must make decisions in rapidly-unfolding and dangerous situations. Second-guessing those decisions with the leisurely benefit of hindsight fails to account for the inherent stresses, difficulties, and other factors that characterize the difficulty with which they must be undertaken. It further fails to a take into consideration such discretionary factors as limited resources or competing demands for the same resources. Ex. E to Def's Mot. Mem., CDR Fleming Decl. 3 ¶ 11. Decisions undertaken during a search are rescue are those that "we would expect inherently to be grounded in considerations of policy," *Baum*, 986 F.2d at 721, and are "susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25. Relitigating those decisions after the fact promises to undermine subsequent attempts to execute rescues on the high seas. They embody the exercise of discretion, and consequently divest this Court of jurisdiction to hear this case.

## Conclusion

For the reasons stated, the motion to dismiss is granted with prejudice. A separate order follows.

11

DATED this 21st day of September, 2020.

BY THE COURT:

_____/S/_____
Paul W. Grimm
United States District Judge